UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>THOMAS DANIEL LITTLE CLOUD,<br><br>        Defendant. | Case No. 16-cr-00266-SI-1<br><br>**ORDER RE FORFEITURE**<br>Re: Dkt. Nos. 60, 72, 83 |

On November 3, 2017, the Court heard argument on the government's Motion for Forfeiture and surety Nichole Little Cloud's Request for Abatement of the Criminal Action, Dismissal of the Indictment, and Exoneration of the Bond. Dkt. Nos. 60, 83. After considering the parties' materials and arguments, the Court orders the bond forfeited, but the forfeiture is set aside. Pursuant to the government's Notice of Dismissal, the Court grants the government leave to dismiss the indictment with prejudice pursuant to Federal Rule of Criminal Procedure 48(a). *See* Dkt. No. 72. The request to abate the criminal action is denied.

**BACKGROUND**

In June 2016, defendant Thomas Daniel Little Cloud was indicted on charges of: (1) possession with intent to distribute methamphetamine; (2) felon in possession of a firearm; (3) using a counterfeit access device; and (4) aggravated identity theft. Dkt. No. 1. In August 2016, defendant was released on a $100,000 appearance bond, secured by defendant's mother Nichole Little Cloud's home. Dkt. No. 22. Ms. Little Cloud avers that at the time she signed the bond, she believed defendant "would make all his court appearances because his number one priority in his life was gaining custody of his son" so that his son would not be placed in foster

care. Declaration of Nichole Little Cloud ("Little Cloud Decl.") (Dkt. No. 80 at 16) ¶ 6. She also declares that she was unaware defendant had any bench warrant history. Supplemental Declaration of Nichole Little Cloud ("Supp. Little Cloud Decl.") (Dkt. No. 91-2) at 2:6-7.

Upon his pretrial release, defendant was placed at a rehabilitation center, and later transitioned to a sober living residence. Little Cloud Decl. ¶ 7. He completed a parenting class and encouraged his wife to seek drug treatment as well. *Id.*, Ex. N. However, defendant failed to appear for a July 3, 2017 status conference. Defendant again failed to appear for his July 7, 2017 change of plea hearing, prompting the Court to issue a no bail arrest warrant. *See* Dkt. Nos. 55, 56, 57. Homeland Security Investigations ("HSI") Special Agent Craig Hyatt and Officer Matthew Werle[1] were assigned as co-lead case agents in the efforts to apprehend defendant. Declaration of Craig Hyatt ("Hyatt Decl.") (Dkt. No. 84-2) ¶ 3; Declaration of Matthew Werle ("Werle Decl.") (Dkt. No. 84-3) ¶¶ 3, 5.

On July 14, 2017, Agent Hyatt contacted Ms. Little Cloud. Hyatt Decl. ¶ 5. She informed Hyatt that she had last seen defendant three weeks earlier in San Francisco and provided the address of a San Francisco apartment where she had visited defendant and believed he was living. *Id.* On July 17, 2017, Agent Hyatt and other HSI agents conducted surveillance at that address, but were unsuccessful in locating defendant. *Id.* ¶ 6.

On July 31, 2017, Agent Hyatt called Ms. Little Cloud regarding information that defendant had left a voicemail for his son on Ms. Little Cloud's cell phone. *Id.* ¶ 7. Ms. Little Cloud stated that defendant had left a message wishing his son a happy birthday on July 20, 2017, and provided the phone number used to leave the message. *Id.* She also provided the phone number that defendant used to call her before he absconded, and contact information for defendant's wife and mother-in-law. *Id.* ¶¶ 8-9. Ms. Little Cloud stated that she had not heard from defendant other than the voicemail left for his son. *Id.* ¶ 10. This information did not provide any leads. *Id.* ¶ 9; *see also* Werle Decl. ¶ 5.

---

[1] Officer Werle works as a Task Force Officer with the HSI and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Werle Decl. ¶ 1. He also works as an Investigator with the California Highway Patrol. *Id.*

On August 10, 2017, the government filed a Motion for Forfeiture of Bond, Judgment Against Defendant, and Enforcement of Surety's Obligations. Dkt. No. 60. Ms. Little Cloud received notice of that motion on August 14, 2017. Little Cloud Decl. ¶ 10. On August 18, 2017, she attended a San Francisco Bar Association clinic to obtain legal advice. *Id.* ¶ 11. She was given the name of a private investigator "well-known for having the ability to find people," and later hired him on August 22, 2017. *Id.* The private investigator spent three days searching a neighborhood that defendant was known to frequent. *Id.* Ms. Little Cloud also asked her family members and defendant's friends to reach out to and ask defendant to turn himself in, which several people did through social media posts. *Id.* ¶ 13.. *Id.* Additionally, Ms. Little Cloud provided information she had about defendant's whereabouts to Agent Hyatt and another HSI agent, Lucy Pezulo. *Id.* ¶ 14; Declaration of Erin Crane ("Crane Decl.") (Dkt. No. 80 at 11) at 11:7-8.

On August 22 or 23, 2017, Ms. Little Cloud met with and hired two attorneys to assist with the forfeiture action and apprehension of defendant. Little Cloud Decl. ¶ 12; Crane Decl. at 11:4-6. She "insisted that they tell any law enforcement person that might encounter [defendant] that he should be considered armed and dangerous." Little Cloud Decl. ¶ 12; Crane Decl. at 11:6-7, 17-18. She also provided counsel with photographs of defendant and a list of his friends and relatives who might be able to locate him. Crane Decl. at 11:14-15. Ms. Little Cloud authorized counsel to offer a reward to any who might lead them to defendant. *Id.* at 11:16. During the course of their meeting, counsel attempted but was unable to find a retired police officer willing to work as a bounty hunter to locate defendant. *Id.* at 11:9-12.

On the evening of August 23, 2017, Ms. Little Cloud's counsel located a friend of defendant's who believed defendant was going to Los Angeles. *Id.* at 11: 19-20. The following day, counsel contacted Agent Pezulo, who advised counsel that Officer Werle was assigned to defendant's case and suggested counsel contact him. *Id.* at 11:21-23.

On August 25, 2017, Ms. Little Cloud's counsel showed photographs of defendant to two of her other clients, both of whom independently told counsel of two San Francisco streets where

1  they knew defendant to sell drugs. *Id.* at 11:24-26. Counsel left a voice message for Officer
2  Werle regarding this and other information on defendant's whereabouts. *Id.* at 11:26 – 12:2.

3  That same day, Ms. Little Cloud told her counsel that a friend of defendant had told her
4  that defendant "was driving cars rented from Sixt Rental Cars in San Jose, that he may be driving
5  a black BMW coupe and that he was currently staying in hotels with a Christina Lal." *Id*. at 12:3-
6  5. This friend was able to monitor Lal's location through Facebook. *Id.* at 12:5-6. Counsel
7  "immediately relayed this information to Officer Werle via voicemail." *Id.* at 12:7. Officer Werle
8  received this information from his HSI Group Supervisor, but was off-duty the rest of the day
9  through the weekend and planned to follow up on the information on August 28, 2017. Werle
10 Decl. ¶ 6.

11 On August 26, 2017, Ms. Little Cloud's counsel and "two others walked through the
12 Tenderloin and Civic Center area of San Francisco looking for [defendant] for about 6 hours." *Id.*
13 at 12:9-10. They found several police officers in the area, showed them photographs of defendant,
14 and asked them to be on the lookout. *Id.* at 12:11-12. Counsel also met with a police captain from
15 the Tenderloin Police Station, who offered to post information about defendant at the station. *Id.*
16 at 12:12-15. Counsel emailed information to the police captain that evening. *Id.* at 12:15; Ex. L.
17 Also that day, counsel received information that defendant was known to sell drugs near two
18 additional San Francisco streets in the Castro District. *Id.* at 12:16-17. Counsel went to and
19 canvassed that area, "asking bouncers seated outside doors if they had seen him in the area." *Id.* at
20 12:18-19.

21 On August 29, 2017, Ms. Little Cloud informed counsel that she was "about to rent a car
22 [defendant] would not recognize and scour the Civic Center area looking for him." *Id.* at 13:1-2.
23 Counsel "discouraged her from doing so," believing defendant was no longer in San Francisco.
24 *Id.* at 13:2-3.

25 On August 30, 2017, at 11:42 a.m., counsel learned that defendant's friend could see on
26 Facebook that Lal had been in the Arden area of Sacramento the previous night. *Id.* at 13:4-11.
27 The friend told counsel that Lal advertised as an escort on a specific webpage under a different
28 name. *Id.* The friend also told counsel of another name that Lal used to check into hotels,

provided a list of four hotels (including the Ramada Inn) that Lal used in that area, said that Lal was driving a Kia stolen from Uber or Lyft, and gave counsel Lal's photograph and phone numbers. *Id.* Counsel "immediately contacted Officer Werle with this information by phone and forwarded it to him via email at 11:54 a.m." *Id.*; *see also* Werle Decl. ¶¶ 10-11.

Counsel attempted but was unable to reach Lal and defendant by phone at 12:01 p.m. *Id.* at 13:12-13. Counsel also found the website ad posted by Lal with a phone number matching the information from defendant's friend. *Id.* at 13:14-16. At 12:58 p.m., counsel "forwarded this information to Officer Werle," who told counsel he would discuss setting up surveillance. *Id.*; *see also* Werle Decl. ¶¶ 11-12. Counsel also informed Officer Werle that she believed defendant had been staying at a Ramada Inn in Sacramento. Werle Decl. ¶ 12. Counsel also warned that defendant was frequently armed, and used methamphetamine. *Id.* Officer Werle then called a CHP investigator to obtain more information about the Arden area to develop an investigation plan. *Id.*

Tragically, however, defendant had already become involved in a shootout with police that day, resulting in the death of Sacramento Sheriff's Deputy Robert French and the wounding of two additional officers. *Id.* ¶¶ 13-14; Crane Decl. at 13:17. According to Officer Werle,[2] as CHP officers sought to enter a room at the Ramada Inn as part of an investigation into a stolen vehicle, defendant "opened fire on officers through the door and walls of the hotel room." Werle Decl. ¶ 14. Defendant then led officers on a high-speed chase until he crashed his vehicle. *Id.* During the course of these events, defendant also sustained injuries, which were ultimately fatal. *Id.*

Ms. Little Cloud's counsel learned of the shooting at 3:16 p.m. when she was contacted by Alice Murphy of the Sacramento Sheriff's Department. Crane Decl. at 13:18-24. Murphy "was seeking information that might be helpful to hostage negotiators who believed [defendant] was in a room [at] the Ramada Inn in Sacramento." *Id.* Counsel provided Murphy with the information she had, as well as photographs of defendant. *Id.* Murphy also contacted Ms. Little Cloud and

---

[2] Officer Werle declares that he learned of this information during his phone call with the CHP investigator and later that day. Werle Decl. ¶¶ 13-14.

5

told her that defendant "was possibly refusing to come out of a hotel room surrounded by law enforcement." Little Cloud Decl. ¶ 16. Ms. Little Cloud and her daughter provided information in response to Murphy's questions. *Id.*

The following day, Ms. Little Cloud and her husband went to the hospital, where they were questioned by detectives and then allowed to see defendant, who was in a coma. *Id.* ¶ 16, 17. The next day, Ms. Little Cloud again went to the hospital, but was not able to see defendant. As she was driving home, she received a call from a detective, who informed her that defendant had died from his wounds sustained during the shootout. *Id.* ¶ 18.

## DISCUSSION

The government moves for forfeiture of the bond, and Ms. Little Cloud requests that the forfeiture be set aside. "The court must declare the bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). "The forfeiture is thus mandatory." *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002). Here, neither party disputes that defendant breached conditions of the bond through his initial failures to appear and his subsequent violent actions. Therefore, the Court orders the bond forfeited.

The Court may, however, "set aside in whole or in part a bail forfeiture upon any condition the court may impose if: (A) the surety later surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). The decision whether to set aside or remit a forfeiture rests within the sound discretion of the Court. *United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982).

In considering whether to exercise that discretion, the Ninth Circuit directs courts to examine the following non-exclusive list of factors: "1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend; and 6) the appropriateness of the amount of the bond." *Nguyen*, 279 F.3d at 1115-16. Courts in this district have considered additional factors, including: 7) "whether actions by the government, unknown to the surety,

increased the risk that the defendant would violate the terms and conditions of his release," and 8) "whether the surety assisted, played any role in, or was in some measure responsible for the conduct by the defendant that breached the release conditions." *See United States v. Famiglietti*, 548 F. Supp. 2d 398, 405 (S.D. Tex. 2008) (applying Ninth Circuit law); *United States v. Villalobos*, No. CR 00-40242, 2005 WL 6127290, at *2 (N.D. Cal. Feb. 17, 2005) (Brazil, M.J.). "[T]he relative weight the courts may ascribe to the acknowledged factors can vary from case to case and . . . in some circumstances one or two factors might play a determinative role, even if all the other factors seemingly point toward a different outcome." *Famiglietti*, 548 F. Supp. 2d at 406. The Court is also guided by the overriding purposes of the Bail Reform Act: ensuring the defendant's appearance in court and observance of the release conditions. *United States v. Vaccaro*, 51 F.3d 189, 192-93 (9th Cir. 1995).

This case has resulted in tragedy for all concerned. Sheriff Deputy French was killed and two other officers were wounded. The violent behavior that resulted in the harm to these officers was egregious. The officers' families, loved ones, and community have suffered a terrible loss. There is no dispute that defendant's conduct and breach of his pretrial release conditions were willful, and law enforcement dedicated resources over several weeks in an attempt to locate and apprehend defendant, incurring substantial cost. In the end, defendant was apprehended, and died, as a consequence of his actions.

Neither party has contested the appropriateness of the amount of the bond, nor is the Court convinced that the government increased the risk that defendant would violate the conditions of his release.[3] While Ms. Little Cloud submitted information concerning defendant's abusive

---

[3] According to Ms. Little Cloud, defendant described serving as an informant for the FBI in exchange for a 2 year sentence. Little Cloud Decl. (Dkt. No. 80 at 16) ¶ 8. But after "months of cooperation," the government extended a plea agreement with a mandatory minimum 12 year sentence. *Id.* ¶ 9. Ms. Little Cloud also states that she drove defendant to the Federal Building on "several occasions in which he did not have scheduled court dates," waited in the cafeteria "while he was escorted somewhere else in the building," and was later told by defendant that he met with FBI agents and others. Supp. Little Cloud Decl. at 2:8-11. Defendant also had a child custody hearing set for July 18, 2017 (after his change of plea hearing date). *Id.* at 2:14-17. Ms. Little Cloud thinks that "requests were made but the government was not willing to allow [defendant] to remain out of custody post-plea for the purpose of attending that hearing." *Id.* She believes defendant felt betrayed by the government, which played a role in his fleeing. Little Cloud Decl. ¶ 9. The government avers that defendant volunteered to act as an informant, but after follow-up

7

childhood before his adoption, and the potential effects of forfeiture on herself, her husband, and her grandson, such information simply provides context for understanding what happened in this case; this information is not a mitigating factor and the Court does not consider it for the purpose of determining whether to set aside the forfeiture. *See Famiglietti*, 548 F. Supp. 2d at 407 ("[D]istrict courts are *not* permitted to take into account, when deciding whether a surety has shown that 'justice does not require bail forfeiture,' the nature and relative severity of the harm that would be visited upon the surety if the court refused to set aside the forfeiture." (citing *Nguyen*, 279 F.3d at 1117 n.2) (original emphasis)).

Ms. Little Cloud is not a professional surety, *Nguyen*, 279 F.3d at 1117, and there is no evidence that she "assisted, played any role in, or was in some measure responsible for the conduct by the defendant that breached the release conditions." *Famiglietti*, 548 F. Supp. 2d at 405. Ms. Little Cloud put in substantial effort to assist law enforcement in apprehending defendant. Ms. Little Cloud and her representatives did more than simply cooperate with and respond to law enforcement inquiries; they engaged in a proactive and extensive search to generate new information as to defendant's whereabouts and sent this information to law enforcement . *See Famiglietti*, 548 F. Supp. 2d at 411 ("[T]he sureties have not shown that any of them has done anything to help the government return [the defendant] to court."); *Nguyen*, 279 F.3d at 1117 (finding sureties "complicit" in the defendant's conduct); *United States v. Lopez*, No. 01-cr-0424-JSW (EDL), 2014 WL 12637926, at *2 (N.D. Cal. July 30, 2014) (surety provided an address in Mexico for the defendant); *Villalobos*, 2995 WL 6127290, at *7 (surety did not assist in apprehending the defendant or even know that the defendant had absconded). Indeed, Ms. Little Cloud's independent efforts located defendant. That her information did not ultimately lead to defendant's apprehension appears to be due to ill-fated timing, rather than a lack of substance, reliability, or effort. It seems that Ms. Little Cloud did everything possible in attempting to assist the government.

---

meetings, the government determined that his information was not actionable and decided not to work with defendant as a cooperator or informant. Declaration of Panya Somnhot (Dkt. No. 84-4) ¶¶ 4-5. The government further declares that it never made any promises or threats to defendant, including any promises regarding a potential sentence. *Id.* ¶ 5.

8

Defendant's death is also a factor to be considered. In this anomalous situation, enforcing the forfeiture would not serve the core purposes of the Bail Reform Act: ensuring the defendant's appearance in court and observance of the release conditions. *Vaccaro*, 51 F.3d at 192-93. The Court sees little risk that setting aside Ms. Little Cloud's obligation on this bond would mean that future sureties would not take their obligations seriously. *Lopez*, 2014 WL 12637926, at *3. It is apparent from Ms. Little Cloud's efforts to locate defendant that she took her obligations seriously.

The Court must determine whether the forfeiture should be set aside, pursuant to the standards set out in Fed. R. Crim. P. 46(f)(2) (forfeiture may be set aside if "(A) the surety later surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture.") Since defendant died after he was captured, he cannot be further surrendered. Considering all of the factors in this case, the Court finds that it appears that justice does not require bail forfeiture. The Court sets aside the forfeiture, *see* Fed. R. 46(f)(2)(B), and exonerates the surety. *See* Fed. R. Crim. P. 46(g).

The Court grants the government leave to dismiss the indictment with prejudice pursuant to Federal Rule of Criminal Procedure 48(a). *See* Dkt. No. 72; abatement is unnecessary.

## CONCLUSION

In light of defendant's failure to appear, the bond is forfeited; based on Fed. R. Crim. P. 46(f)(2), the forfeiture is set aside and the surety is exonerated. The government is granted leave to dismiss the indictment with prejudice. The request to abate the case is denied. .

**IT IS SO ORDERED**.

Dated: November 9, 2017

SUSAN ILLSTON
United States District Judge